**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
AGNIESZKA WOS,

                                                           <u>**MEMORANDUM AND**</u>
                                                           <u>**ORDER**</u>

                          Plaintiff,

        v.                                                 2:24-cv-00644 (LGD)


THE COUNTY OF SUFFOLK,

                          Defendant.
-----------------------------------------------------------X
CHRISTINA PASSAVIA,


                          Plaintiff,

        v.                                                 2:24-cv-01395 (LGD)


THE COUNTY OF SUFFOLK,

                          Defendant.
-----------------------------------------------------------X
NIKOLAOS SPANOS,


                          Plaintiff,

        v.                                                 2:24-cv-02684 (LGD)


THE COUNTY OF SUFFOLK,

                          Defendant.
-----------------------------------------------------------X

**LEE G. DUNST**, Magistrate Judge:

        In these three related cases, Plaintiffs— who are relatives of individuals arrested in

Suffolk County for driving while intoxicated—allege a variety of defects with Defendant County

of Suffolk's (the "County") procedures for seizure of vehicles driven by those who were

arrested.  In sum, Plaintiffs each seek monetary damages and equitable relief on the grounds that

the procedures afforded to them allegedly violate the Due Process Clause of the Fourteenth Amendment.  Presently before the Court are the County's motions to dismiss these cases for (1) lack of subject matter jurisdiction and (2) failure to state a claim.  For the reasons that follow, the Court concludes that none of the Complaints states a claim and grants the County's motions in *Wos* and *Passavia* with prejudice and in *Spanos* without prejudice.

## I.    BACKGROUND

### A.    The County's Vehicle Seizure Laws

Before turning to the facts of these cases, a brief overview of the legal landscape governing vehicle seizures in Suffolk County is in order.

Suffolk County law authorizes the seizure of "[a]ny property which constitutes . . . an instrumentality of an offense."  Suffolk County Code § 420-6.  Upon seizure, [t]he seizing agency shall send notification of the seizure to *all titled owners, registrants on file with the New York State Department of Motor Vehicles* . . . within five business days of the seizure."  *Id.* § 420-6(B)(1) (emphasis added).  County law requires the notice to state, among other things "that there will be a hearing promptly scheduled before a neutral magistrate to determine whether probable cause existed" for the arrest and seizure.  *Id.*

The primary purpose of this hearing—which is known as a *Krimstock* hearing—is to determine whether the County will retain the vehicle pending a civil forfeiture action.[1]

---

[1] The hearing is the product of a Second Circuit decision, *Krimstock v. Kelly*, 306 F.3d 40, 70 (2d Cir. 2002), which imposed a requirement that "plaintiffs must be given an opportunity to test the probable validity of the [] deprivation of their vehicles *pendente lite*, including probable cause for the initial warrantless seizure."  However, there is an open question whether *Krimstock* remains governing law following the Supreme Court's decision last term in *Culley v. Marshall*, 144 S. Ct. 1142 (2024).  In *Culley*, the Supreme Court rejected the argument that the Due Process Clause requires "a preliminary hearing [that is] an earlier version of the forfeiture hearing itself."  *Id.* at 1149.  In explicitly referencing *Krimstock*, the Supreme Court held in *Culley* that "[a]fter a State seizes and seeks civil forfeiture of personal property, due process requires a timely forfeiture hearing *but does not require a separate preliminary hearing*."  *Id.* (emphasis added).  Regardless of whether *Krimstock* and *Culley* can be harmonized, the County's procedures nonetheless purport to remain consistent with *Krimstock*, and *Culley* certainly sets a floor, but

2

After the *Krimstock* hearing (but no later than 180 days after the seizure), the County may commence a civil forfeiture action. *Id.* § 420-6(C). Notably, civil forfeiture actions are only permitted where "the property was seized in connection with the acts of an individual who has been convicted at least once before" of certain violations, including driving while intoxicated. County law also provides certain protections to so-called "innocent owners" or "noncriminal defendants"—those who own the property but were not involved in the crime committed using the property. *See, e.g.*, *id.* § 420-7(G) ("No property shall be forfeited under this article unless the claiming authority produces clear and convincing evidence that the noncriminal defendant engaged in affirmative acts which aided, abetted or facilitated the conduct of the criminal defendant.").

Notably, the Second Circuit previously has commented on the comprehensive nature of Suffolk County's proceedings involving seizure of property involved in criminal activity, such as DWI arrests. *See Ferrari v. Cnty. of Suffolk*, 845 F.3d 46, 66 (2d Cir. 2016), *as amended* (Jan. 4, 2017) ("[L]est we ignore the bigger picture, it must be observed that extensive process is already afforded in Suffolk County to protect a title owner's interests.").

### B.    Factual Background

The Court turns next to the factual allegations here. The three Plaintiffs in these cases raise overlapping but distinct challenges to Suffolk County's vehicle seizure procedures. The Court thus addresses each Plaintiff's allegations in turn with careful attention given to areas of similarity and difference. The Court takes the following facts from the three Complaints, the documents attached thereto, other documents "integral" to the Complaints, and other documents

---

not a ceiling, for the amount of process required in this context. *See id.* at 1153 ([T]he States and Congress have adopted a wide variety of approaches. . . . Our decision today does not preclude those legislatively prescribed innovations."). Still, as will become apparent, this Court's analysis herein is (at least in part) informed by *Culley*.

of which the Court may take judicial notice.  *See YCF Trading Inc. v. Skullcandy, Inc.*, No. 24-CV-2540, 2025 WL 929714, at *2 n.5 (E.D.N.Y. Mar. 27, 2025).  "In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relates to the case *sub judice*."  *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 (E.D.N.Y. 2011).

In addition, the Court has requested and reviewed the parties' supplemental submissions on a variety of topics, including the extensive number of lengthy exhibits submitted by both parties in their briefing (*see* Electronic Order, dated October 8, 2024), the status of the two civil forfeiture actions in the *Wos* and *Passavia* cases, the status of the three criminal proceedings against the relatives of Plaintiffs, and information regarding the attorneys who represented Plaintiffs' relatives in their various state court proceedings (*see* Electronic Order, dated February 24, 2025).  *See* ECF No. 28; ECF No. 29; ECF No. 32; ECF No. 33 in 24-cv-00644.

    1.   <u>Plaintiff Wos</u>[2]

    *a)*    *The Sereda Vehicle (2016 Mercedes Benz)*

Plaintiff Agnieszka Wos is married to Mr. Martin Sereda.  ECF No. 1 ¶ 3.  According to the New York State Department of Motor Vehicles (the "DMV"), Mr. Sereda is the sole registered owner of a 2016 Mercedes-Benz (the "Sereda Vehicle").  *Id.* ¶¶ 3, 16, 21.  The DMV records for the Sereda Vehicle do *not* list Plaintiff Wos as a registered or titled owner of the Sereda Vehicle.  *Id.* ¶ 19; ECF No. 24-4.  DMV records indicate that Empire Bonding Insurance Co. and TD Auto Finance, LLC have liens on the Sereda Vehicle.  ECF No. 24-4.

Although the Sereda Vehicle is registered only in the name of Mr. Sereda, Plaintiff Wos alleges that she co-owns the vehicle because the couple intended for the vehicle to belong to both

---

[2] All citations to Electronic Case Filings ("ECF") in this section are to filings in *Wos v. County of Suffolk*, No. 24-cv-00644 (LGD).

of them, she traded in her prior vehicle and the dealer accordingly credited $18,500 for the purchase of the Sereda Vehicle, and the Sereda vehicle was marital property under New York state law. *Id.* ¶¶ 3, 18, 19.  None of this information about Plaintiff Wos's claimed ownership interest in the Sereda Vehicle is on record with the DMV.

### b) *Arrest and Conviction of Mr. Sereda for DWI*

On November 28, 2022, Mr. Sereda was driving the Sereda Vehicle and was arrested for driving while intoxicated (DWI). *Id.* ¶ 20.  At the time of his arrest, Mr. Sereda's blood alcohol content was apparently .28%—more than three times the legal limit.  ECF No. 24-2 at 2.  He subsequently was charged with and pled guilty to aggravated DWI in violation of New York Vehicle Traffic Law ("VTL") § 1192 2-AA on September 5, 2023.  ECF No. 32 at 2; ECF No. 24-10.  According to the parties, Mr. Sereda has not yet been sentenced.  ECF No. 32 at 2*.* Importantly, this was not Mr. Sereda's first DWI offense, as he was previously convicted of the same offense in 2018.  ECF No. 24-2.

### c) *Krimstock Hearing and Civil Forfeiture Action Regarding the Sereda Vehicle*

Following Mr. Sereda's arrest in November 2022, the Suffolk County Police Department seized and impounded the Sereda Vehicle.  ECF No. 1 ¶ 21.  According to the Complaint, Mr. Sereda later was provided with some sort of notice of seizure and hearing via mail.  *Id.*[3] Critically (according to Plaintiff), Ms. Wos was never provided with notice of the seizure or hearing.  *Id.* ¶ 24.

A *Krimstock* hearing took place on December 16, 2022.  *See* ECF No. 24-6.  At the hearing, Mr. Sereda was represented by Mr. Anthony Campanelli (who is also Plaintiff Wos's

---

[3] The Complaint purports to challenge the sufficiency of the notice as to Mr. Sereda.  However, as Mr. Sereda is not a plaintiff before this Court, that issue is not before the Court.

counsel here). *Id.* at 4. Neither Mr. Campanelli nor Mr. Sereda raised Plaintiff Wos's purported ownership interest in the Sereda Vehicle at the *Krimstock* hearing. *See generally id.* At the hearing, the County stipulated to "releas[ing] the vehicle to the defendant pending the underlying criminal – civil forfeiture action." *Id.* at 5. Accordingly, Mr. Sereda retrieved the Sereda Vehicle on December 22, 2022 and apparently has been in possession of it ever since. ECF No. 24-7.

On June 28, 2023, the County commenced a civil forfeiture in Suffolk County Supreme Court action against Mr. Sereda and the Sereda Vehicle, but *not* against Plaintiff. ECF No. 1 ¶ 29. Plaintiff Wos contends that the failure to name her in the lawsuit allegedly meant she could not protect her claimed ownership interest (which is not reflected in the DMV records) in the Sereda Vehicle. *Id.* ¶ 10 ("[T]he County's refusal to allow innocent owners like Plaintiff to participate in the forfeiture action strip innocent owners, including Plaintiff herein, of the right and ability to protect her property interest in the vehicle."). However, in answering the complaint in the civil forfeiture action, Mr. Sereda did assert Plaintiff Wos's alleged ownership interest as an affirmative defense. *See* ECF No. 24-9. Although Plaintiff had the ability as a matter of law to move to intervene in the civil forfeiture action, Plaintiff never made any such effort because, according to Plaintiff, the County allegedly does not stipulate to such interventions. ECF No. 1 ¶ 9. According to the parties, the civil forfeiture action against Mr. Sereda and the Sereda Vehicle remains pending at this time. ECF No. 32. As noted previously, the Sereda Vehicle was returned to Mr. Sereda on December 22, 2022—immediately following the *Krimstock* hearing.

2.    <u>Plaintiff Passavia</u>[4]

a)    *The Travis Passavia Vehicle (2020 Chevrolet)*

Plaintiff Christina Passavia's case runs a close parallel to the facts involving Plaintiff Wos. Plaintiff Passavia is married to Travis Passavia. ECF No 1 ¶ 3. According to DMV records, Mr. Passavia is the sole registered owner of a 2020 Chevrolet (the "Travis Passavia Vehicle"). DMV records do *not* show Plaintiff Passavia as an owner of the Travis Passavia Vehicle. *Id.*; ECF No. 27-4.

However, like Plaintiff Wos, Plaintiff Passavia alleges she is a co-owner of the Travis Passavia Vehicle because she traded in a prior vehicle for credit to purchase it, the couple intended co-ownership, and New York state law classifies it as marital property. ECF No. 1 ¶¶ 16, 18, 19, 29. Again, however, there is no evidence on record with the DMV that Plaintiff Passavia is an owner of the Travis Passavia Vehicle.

b)    *Arrest and Conviction of Travis Passavia for DWI*

On August 8, 2022, Travis Passavia was driving the Travis Passavia Vehicle in Patchogue, New York when he was arrested for DWI. *Id.* ¶¶ 20-21; ECF No. 27-2. Mr. Passavia refused to submit to a chemical breath test and was arrested. ECF No. 27-2 at 2. Records showed that Mr. Passavia previously had been convicted of DWI on February 5, 2019. *Id.* Mr. Passavia was charged with violating VTL § 1192-03 and has apparently pleaded guilty. *Id.*; ECF No. 36.

c)    *Krimstock Hearing and Civil Forfeiture Action Regarding the Travis Passavia Vehicle*

Mr. Passavia, represented by counsel, appeared at a *Krimstock* hearing on October 28,

---

[4] All citations to ECF filings in this section are to filings in *Passavia v. County of Suffolk*, No. 24-cv-01359 (LGD).

2022.  ECF No. 27-6.  At the hearing, Mr. Passavia and the County agreed that the County would release the Travis Passavia Vehicle to Mr. Passavia.  *Id.* at 4-5.  Mr. Passavia agreed to pay storage and towing fees relating to the seizure, install an interlock device, and post a $50,000 bond.  *Id.*  Mr. Passavia retrieved the Travis Passavia Vehicle on November 10, 2022.  ECF No. 27-7.

The County subsequently commenced a forfeiture action against Mr. Passavia and the Travis Passavia vehicle on February 22, 2023.  ECF No. 27-8.  Plaintiff Passavia was not named in either the complaint or amended complaint.  *Id.*  Now represented by Mr. Campenelli (the same attorney who represented Mr. Sereda and who represents all three Plaintiffs in these cases), Mr. Passavia asserted various affirmative defenses, including failure to join a necessary party (*e.g.*, Plaintiff Passavia) and failure to state a claim on the grounds that Plaintiff Passavia was an innocent owner of the Travis Passavia Vehicle.  ECF No. 27-9 at 2-8.

Notably, Plaintiff Passavia actually attempted to intervene in the underlying action.  *See* ECF No. 1 ¶ 26; ECF No. 27-12 (documenting July 24, 2023 motion to intervene).  However, the County opposed Plaintiff Passavia's intervention, and the state court later denied the intervention motion.  ECF No. 1 ¶ 26; ECF No. 27-12 (documenting October 2, 2023 decision denying motion to intervene).  The Complaint does not allege (nor is there any evidence to show) that Plaintiff Passavia appealed that decision.  Although the civil forfeiture action is still pending in Suffolk County Supreme Court, Mr. Passavia has been in possession of the Travis Passavia Vehicle since November 2022.  *See* ECF No. 27-7.

3.    Plaintiff Spanos[5]

a)    *The Spanos Vehicle (2022 Chevrolet)*

Plaintiff Nikolaos Spanos's case presents a distinct set of facts.  Plaintiff Spanos is a resident of Suffolk County.  Plaintiff Spanos leased a 2022 Chevrolet (the "Spanos Vehicle").  ECF No. 1 ¶ 29.  According to DMV records, ACAR Leasing LTD is the titled owner of the Spanos Vehicle, Plaintiff Spanos is the registrant, and Wells Fargo Bank NA is a lienholder.  ECF No. 19-4.  Mr. Spanos is the father of Georgios Spanos.  Notably, Georgios Spanos apparently has no property interest in the Spanos Vehicle, though Mr. Spanos has lent his vehicle to his son Georgios on at least one occasion.  ECF No. 1 ¶¶ 31, 75.

b)    *Arrest and Conviction of Georgios Spanos for DWI*

On January 9, 2024, Georgios Spanos was driving the Spanos Vehicle when he was involved in a motor vehicle accident on Jericho Turnpike.  ECF No. 19-2.  According to the police report, Georgios Spanos rear ended another vehicle, causing a four-car crash, and was arrested for DWI.  *Id.*; ECF No. 1 ¶ 31.  Georgios Spanos had a prior conviction for DWI from 2012.  ECF No. 19-3.  In connection with the January 9, 2024 accident, Georgios Spanos later pled guilty to violating VTL § 1192-02.  ECF No. 27.

c)    *Krimstock Hearing and Subsequent Developments*

Following the arrest of Georgios Spanos, the Spanos Vehicle was seized and impounded.  ECF No. 1 ¶ 32.  The Suffolk County Police Department sent a notice of seizure and hearing to the leasing company, Plaintiff Spanos, and Wells Fargo.  ECF No. 1-2.  The notice, however, incorrectly stated that the hearing was to take place on January 16, 2024 when it had actually been scheduled for ten days later on January 26, 2024.  ECF No. 1. ¶ 34-35.

---

[5] All citations to ECF filings in this section are to filings in *Spanos v. County of Suffolk*, No. 24-cv-02684 (LGD).

The *Krimstock* hearing went forward on January 26, 2024 without Plaintiff Spanos, ACAR Leasing, or Wells Fargo present (which is not surprising as due to the incorrect date listed on the aforementioned notice). *Id.* ¶ 38. The Assistant County Attorney Leland Solon (who is now the same attorney representing the County in the case before the undersigned) read into the record a letter dated January 23, 2024 from Plaintiff Spanos to the Suffolk County Police Department. *See* ECF No. 19-7; ECF No. 1-11. Plaintiff's letter states as follows:

> I demand the immediate release of my pick-up truck which was impounded by the Suffolk County Police Department, apparently when they arrested my son.
>
> I have done nothing wrong, was not arrested, and was not involved in, or present when, my son was arrested.
>
> Please tell me where to go to pick up my vehicle.
>
> I can pick it up on any day, Monday through Friday. You can reach me at [phone number omitted].

ECF No. 1-11. Plaintiff's letter is dated January 23, 2024 but apparently was not delivered to the County until January 25, 2024. ECF. No. 1-12 (United States Postal Service tracking information).

At the January 26 hearing, the Assistant County Attorney told the magistrate that notice of the seizure and hearing had been provided to Plaintiff Spanos, but failed to recognize or advise the hearing officer that the notice incorrectly stated the date of the hearing. ECF No. 19-7 at 1-2. Subsequently, the magistrate requested information about the basis for the police stop of the Spanos Vehicle. *Id.* at 4. In response, the Assistant County Attorney offered into evidence certified misdemeanor information relating to this incident. *Id.* at 5. The Assistant County Attorney then stated as follows at the hearing:

> According to the officer, on January 9, 2024, approximately, 7:45 P.M., the Defendant was observed of having been in a motor vehicle crash,

> where he rear-ended a vehicle and caused two other vehicles to collide creating a four-car accident.
>
> The Defendant stated to the officer that he was driving westbound on Jericho Turnpike and that he was looking down, trying to change a song on the radio and did not see the vehicle in front of him.
>
> The officer interviewed the Defendant finding that he had bloodshot, glassy eyes, an odor of alcoholic beverage on his breath, he was slurring his words and he was unsteady on his feet.
>
> Based upon the weather conditions, the field sobriety test could not be performed, the Defendant ultimately consented to a breath test which results of a reading of .141% BAC.

*Id.* at 5-6. The Assistant County attorney then offered into evidence that Plaintiff's son previously had been arrested for DWI on November 20, 2011. *Id.* at 6.

Upon the completion of the County's presentation, the magistrate issued the following oral ruling:

> In making the determination of Default in finding the owner failed to -- either the owner or a representative, the owner had failed to appear in court today.
>
> The County has made out a Prima Facia [sic] case that probable cause exists for the arrest of the vehicle's operators and is likely to prevail in an action to forfeit the vehicle and it is necessary that the vehicle remain impounded in order to insure its availability in the event of a civil forfeiture action.

*Id.* at 6-7.

This determination of default later was provided to Plaintiff Spanos. ECF No. 1-4. According to that default document, "SUFFOLK COUNTY IS DIRECTED TO RETAIN THE VEHICLE BEARING THE ABOVE NOTED VEHICLE IDENTIFICATION NUMBER PENDING RESOLUTION OF A FORFEITURE PROCEEDING" and further noted that the magistrate had concluded that the Count had met its *prima facie* burden and "[i]n light of the Respondent's default, this prima facie case is unrebutted." *Id.* at 3.

11

Suffolk County never instituted civil forfeiture proceedings against Plaintiff Spanos, Georgios Spanos, or the Spanos Vehicle. The County remained in possession of the Spanos Vehicle until on or about May 7, 2024, when a towing company (which had been approved by Plaintiff) retrieved the Spanos Vehicle from the County Police Impound Unit. ECF No. 19-8. Other than the fact that Plaintiff, now represented by Mr. Campanelli, filed the instant complaint in federal court on April 10, 2024 (ECF No. 1), the formal record appears to be silent on what else, if anything, occurred between the *Krimstock* hearing on January 26, 2024, and the return of the Spanos Vehicle on May 7, 2024.

### C.    Procedural Background and Subsequent Developments

Plaintiff Wos commenced her case on January 1, 2024, *see* ECF No. 1 in 24-cv-644, Plaintiff Passavia brought suit on February 23, 2024, *see* ECF No. 1 in 24-cv-1359, and Plaintiff Spanos commenced suit on April 10, 2024, *see* ECF No. 1 in 24-cv-2684. Each of these Plaintiffs alleges a violation of their procedural and substantive due process rights under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 and seeks declaratory and injunctive relief. The parties consented to the undesigned for all purposes in all three related cases. ECF No. 9 in 24-cv-644; ECF No. 14 in 24-cv-1359; ECF No. 30 in 24-cv-2684.

The County has moved to dismiss each complaint. *See* ECF No. 24-12 (the "Motion").[6] In sum, the County argues that all three complaints fail to state a claim for which relief can be granted and, in the alternative, that the Court should abstain from hearing the *Wos* and *Passavia* cases based on the Supreme Court's decision in *Younger v. Harris*, 401 U.S. 37 (1971). Plaintiff opposes the motion. ECF No. 26 (the "Opposition"); ECF No. 25 (supporting materials). The

---

[6] Unless otherwise noted, all subsequent ECF citations are to the *Wos* Docket, No. 24-cv-644 (LGD), as the parties have briefed the three cases together, but have filed the exhibits relevant to each case only on that case's individual docket.

County has timely filed a reply, and the Motion was fully briefed on October 7, 2024.  ECF No.

27 (the "Reply").

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(1) and *Younger* Abstention

Although their jurisdiction is limited, "a federal court's 'obligation' to hear and decide a

case is 'virtually unflagging.'"  *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)

(quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).  In

limited circumstances (and with the interests of federalism in mind) federal courts abstain from

exercising jurisdiction over certain proceedings where there is a closely related state court

proceeding.  The Supreme Court has clarified that *Younger* abstention applies in three limited

circumstances:  (1) where there is an "ongoing state criminal prosecution[];" (2) in "certain 'civil

enforcement proceedings;'" and (3) where there are "civil proceedings involving certain

orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions."

*Id.* (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368

(1989)).  "The three conditions for abstention under *Younger* are as follows: (1) there is an

ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and

(3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review

of the federal constitutional claims." *Pawelsky v. Cnty. of Nassau, New York*, 684 F. Supp. 3d 73,

82 (E.D.N.Y. 2023) (citation omitted).  *Younger* abstention generally does not apply when a

plaintiff seeks monetary damages.  *See McDonald v. Esposito*, No. 20-CV-828, 2021 WL

1062259, at *3 (E.D.N.Y. Mar. 18, 2021) (citing *Kirschner v. Klemons*, 225 F.3d 227, 238 (2d

Cir. 2000)).

### B.    Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a

13

complaint must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable interest that the defendant is liable for the alleged conduct." *Id.*  In deciding a motion to dismiss, the Court "must accept as true all well-pled factual allegations," but "need not accept conclusory assertions, legal conclusions, or formulaic recitation of a claim's element." *Bayside Wellness Physical Therapy P.C. v. Double Why Design, Inc.*, No. 23-CV-03842, 2025 WL 458224, at *3 (E.D.N.Y. Feb. 11, 2025) (citations omitted).  Courts may "consider documents attached to that pleading, materials incorporated by reference in or integral to that pleading, and matters of which the court may take judicial notice." *Id.* (citing *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023)).  The task is a "context-specific" one, and the court must "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 664.

## III.    DISCUSSION

### A.    Wos and Passavia's Claims Are Not Subject to *Younger* Abstention

Citing the *Younger* doctrine, the County argues that this Court should abstain from hearing the *Wos* and *Passavia* cases.  It is worth emphasizing again that Plaintiffs Wos and Passavia allege nearly an identical set of material facts (save one difference discussed below). The Court thus considers their claims in tandem and rejects the County's *Younger* abstention argument in both cases for the reasons discussed herein.

A motion to dismiss rooted in *Younger* abstention is properly construed as a motion under Rule 12(b)(1).  *See, e.g.*, *Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP*, No. 20-CIV-9784, 2022 WL 901660, at *16 (S.D.N.Y. Mar. 28, 2022) (construing *Younger* dismissal arguments as motion under Rule 12(b)(1)).  Because *Younger* abstention (although not

14

jurisdictional in the strictest sense of that word) goes to the question of whether a court will hear a particular case, the Court considers first whether dismissal under *Younger* is warranted. *See Craig v. Saxon Mortg. Servs., Inc.*, No. 13-CV-4526, 2015 WL 171234, at *4 (E.D.N.Y. Jan. 13, 2015) ("'When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds, such as Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must consider the Rule 12(b)(1) motion first.'") (quoting *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 703 (S.D.N.Y. 2011)).[7]

In urging the Court to reject the County's *Younger* argument, Plaintiffs do not appear to contest that there are ongoing state proceedings or that there is an important state interest in those proceedings. *See* ECF No. 26 at 34-37; *accord Fouche v. Schneiderman*, No. 14-CV-752, 2015 WL 1258288, at *2 (E.D.N.Y. Mar. 17, 2015) (citing cases and holding that "*Younger* abstention has been extended to civil forfeiture proceedings"). Instead, Plaintiffs argue that "Wos and Passavia are not parties to the state civil forfeiture proceedings," and thus those proceedings do not provide a forum for judicial review of their claims. ECF No. 26 at 37. It is true that "[g]enerally, where the plaintiff in a federal action is not a party to the state proceeding, *Younger* concerns about federal adjudication do not arise." *Donahue v. Mangano*, 886 F. Supp. 2d 126, 143 (E.D.N.Y. 2012) (citation omitted). But Plaintiff's statement of the law misses some important nuance. Indeed, as the court in *Donahue* recognized, "*Younger* may apply to the claims of third-parties who are not directly involved in any pending state proceeding." *Id.* (citation omitted). Furthermore, in determining whether *Younger* applies to a third party to a

---

[7] *Younger* abstention refers to cases where a Court technically has jurisdiction but is deciding not to exercise it. For that reason, the Court considers it prudent to decide whether *Younger* applies in the first instance before considering whether the complaints state a claim.

state proceeding, the Second Circuit has looked to whether "the legal interests of [the state court party] are sufficiently intertwined with those of [the federal plaintiff] to make abstention applicable." *Spargo v. N.Y. State Comm'n on Jud. Conduct*, 351 F.3d 65, 81-82 (2d Cir. 2003); *see also Nat'l Inst. for Fam. & Life Advocs. v. James*, 746 F. Supp. 3d 100, 115 (W.D.N.Y. 2024) (applying the intertwined interest test).

The types of cases where courts apply *Younger* to third parties present uniquely different circumstances than this case. For example, in *Hicks v. Miranda*, 422 U.S. 332, 348-49 (1975), the Supreme Court held that, although criminal proceedings had not yet been instituted against the owners of an adult theater, their federal court challenge to an obscenity law was barred by *Younger* where the state had begun other proceedings against theater employees. The interests of the non-party owners and the defendant employees, the Supreme Court held, were "intertwined," in a way that "the federal action sought to interfere with the pending state prosecution." *Id.*

Here, it cannot be said that the interests of Plaintiffs Wos and Passavia are "sufficiently intertwined" with those of their spouses, who were arrested for driving while intoxicated and currently are parties to the forfeiture proceedings. Critically, Plaintiffs are challenging the sufficiency of the notice and opportunity to be heard as to them, not as to their spouses who are the parties in the state court proceedings. They assert that they have an independent property interest of which the County allegedly deprived them without due process of law. Their husbands, as parties to the state civil forfeiture proceedings, would be in no position to raise Plaintiffs' independent claims.

Additional reasons persuade the Court that applying *Younger* is not appropriate. First, Plaintiffs seek in part monetary damages, and such claims generally are not subject to *Younger*. *See McDonald*, 2021 WL 1062259, at *3 (collecting cases). Second, the Supreme Court's most

recent foray into *Younger* abstention urged lower courts to tread lightly, emphasizing that "[c]ircumstances fitting within the *Younger* doctrine . . . are exceptional." *Sprint*, 571 U.S. at 73.

Accordingly, the Court declines to apply *Younger* to the pending proceedings involving Plaintiffs' spouses where Plaintiffs' claims before the undersigned implicate different due process interests than the state court proceedings.

### B.    The *Wos* and *Passavia* Complaints Fail to State a Claim

Plaintiffs Wos and Passavia assert that the County violated their due process rights in two ways.  First, the County allegedly failed to provide them with notice and an opportunity to be heard in connection with the forfeiture of the vehicles after their husbands' DWI arrests.  Second (and relatedly), by requiring Plaintiffs Wos and Passavia to intervene in the civil forfeiture action (rather than be named as defendants in the first instance), the County allegedly impermissibly placed the burden on them "to seek to obtain due process," rather than have it afforded to them as of right.  ECF No. 26 at 24-25.  As set forth herein, the Court rejects both these claims as a matter of law.

#### 1.    Procedural Due Process

Under the Fourteenth Amendment, "[n]o state shall . . . deprive any person of . . . property, without due process of law."  U.S. Const. amend XIV.  "In a § 1983 suit brought to enforce procedural due process right, a court must determine (1) whether a property interest is implicated, and, if it is, (2) what process is due before the plaintiff may be deprived of that interest."  *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011).

As to the first prong, although the parties spill unnecessary pages on this question, the County ultimately concedes (in a carefully crafted double negative sentence) that Plaintiffs are entitled to at least *some* due process. *See* ECF No. 27 at 3 ("The County's policy is *not* that Wos and Passavia are *not* entitled to any due process.") (citation omitted) (emphasis added); *see also*

17

*Sommerville v. Wright*, No. 12-CV-165, 2014 WL 794275, at *6 (E.D.N.Y. Feb. 25, 2014) ("[E]ven an individual who does not hold title at the time of his vehicle's seizure has a sufficient interest in the 'continued possession and use' of the vehicle to bring a due process claim."). (citation omitted).

The question then is whether the County's procedures as to these Plaintiffs satisfy due process. The Court is convinced that they do as a matter of law and rejects Plaintiffs' claims that additional procedures are necessary to satisfy due process in this context.

a)    *Alleged Failure to Provide Adequate Notice*

Plaintiffs Wos and Passavia first claim that the County did not provide them with adequate notice of any proceedings against the vehicles used when their husbands were arrested. ECF No. 1 ¶ 61. In defining the scope of adequate notice, the Supreme Court long ago held that, under the Due Process Clause, "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action" suffices. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *accord Everyday People NYC LLC v. Ali*, No. 23-CV-2436, 2024 WL 3912820, at *6 (E.D.N.Y. Aug. 23, 2024)

To start, Suffolk County law already provides for notification "*to all titled owners, registrants on file with the New York State Department of Motor Vehicles*." Suffolk County Code § 420-6(B)(1) (emphasis added). It is undisputed that the County provided such notice to those individuals and entities whose names were on file with the DMV for these vehicles. A number of critical facts omitted by Plaintiffs from their Complaints lead the Court to conclude this notice was more than adequate as to the seizure of these vehicles. *First*, neither Plaintiff Wos nor Plaintiff Passavia alleges that they were titled owners or that their names were on file with the DMV. *Second*, neither Plaintiff alleges that the County had any alternative way of discovering that they had undisclosed ownership interests (as they claim) in the respective

18

vehicles prior to commencing the forfeiture action. *Third*, neither Plaintiff alleges that she notified the County that she asserted an interest in the vehicle prior to the commencement of the civil forfeiture actions or that the County knew of her claimed ownership interest before commencing those proceedings. *Fourth*, Plaintiffs Wos and Passavia do not allege that they did not have actual notice of the proceedings against their husbands and their vehicles (as the notice was apparently sent to the homes they share with their husbands).[8]

Although the Court cannot identify any cases in this or any other Circuit directly addressing the notice requirements to unregistered individuals claiming an ownership interest (nor do the parties direct the undersigned to such case law), the Court takes note that other courts have stated in similar circumstances that "at a minimum . . . proper procedures include that the notice must be sent *to titled owners, registered owners and record lienholders of the seized vehicles*." *HVT, Inc. v. Port Auth. of New York & New Jersey*, No. 15-CV-5867, 2018 WL 3134414, at *11 (E.D.N.Y. Feb. 15, 2018) (emphasis added), *report and recommendation adopted*, 2018 WL 1409821 (E.D.N.Y. Mar. 21, 2018); *see also Toyota Lease Tr. v. Vill. of Freeport*, No. 20-CV-2207, 2023 WL 4443992, at *9 (E.D.N.Y. Jan. 24, 2023) (same), *report and recommendation adopted*, 2023 WL 4449333 (E.D.N.Y. Mar. 30, 2023). Plaintiffs Wos and Passavia's arguments, however, require an additional step. In determining the scope of appropriate notice, the court in *HVT* emphasized that "information as to the identities of the registered and titled owners of vehicles is *readily available*." *HTV*, 2018 WL 3134414, at *11 (emphasis added). And this legal standard makes good sense as the County could not seriously

---

[8] Plaintiff Wos's allegations in fact suggest she did have actual notice regarding the vehicle's seizure. As the Complaint acknowledges, "Plaintiff did not attempt to intervene in the forfeiture action, as the County categorically refuses to stipulate to such intervention in similar cases." The Complaint thus concedes that Plaintiff Wos made a calculated decision (based, in part, on her knowledge of the upcoming proceedings) not to intervene. ECF No. 1 in 24-cv-644. Plaintiff Passavia obviously had actual notice because, as discussed below, she chose to intervene (albeit unsuccessfully).

argue that notice to titled and registered owners is in anyway burdensome as such information could be retrieved from the DMV.

However, the unknown identities of all other hypothetical individuals who potentially might claim an ownership interest—even though they are not titled owners or registered with the DMV—are not so easily ascertainable at all.  This fact is critical.  Requiring the County to affirmatively identify all such individuals who might claim an ownership interest would be an extremely burdensome task at the outset that is likely to delay the commencement of the subsequent forfeiture action.  The list of potential investigation targets could be long and unduly burdensome for the County.  For example, it might include multiple family members, friends, or other associates of the titled owner (who may reside at multiple addresses) and require interviews or requests for documents to ascertain the nature of the alleged ownership interest.  Indeed, in *Ferrari*, 845 F.3d at 65-66, the Second Circuit noted (in the context of *Krimstock* hearings), that "a requirement that Suffolk County gather evidence material to the availability of alternative measures prior to the hearing could have the effect of delaying these hearings, which would arguably be detrimental to the interests not only of innocent owners, but title owners more generally."  The same logic applies here because requiring the County to investigate any and all potential owners (other than those identified by the DMV) before commencing forfeiture proceedings could harm, not help, the titled owners who would have to endure a possible delay for this investigation.  And the Supreme Court, too, has emphasized the importance of a timely hearing.  *Culley*, 144 S. Ct. at 1153 ("[T]he Due Process Clause requires a *timely* forfeiture hearing.") (emphasis added); *see also id.* at 1155 (Gorsuch, J., concurring) (identifying problematic "[d]elay" associated with many civil forfeiture proceedings).  Plaintiffs cannot plausibly allege that the Due Process Clause requires this demanding effort to search out any and

all possible individuals or entities asserting a property interest other than those on file with the DMV.

What is more, New York law requires that all vehicle owners themselves register with the DMV. *See* VTL § 2104 ("*Every owner* of a vehicle which is in this state . . . *shall* make application to the commissioner for a certificate of title of the vehicle within thirty days after transfer to him of the vehicle.") (emphasis added). And although a decision to forego titled ownership does not destroy the right to bring a due process claim, *see Sommerville*, 2014 WL 794275, at *6, it does not necessarily follow that the County's decision to forego notice amounts to a due process violation in every circumstance. Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Mullane*, 339 U.S. at 314. Here, a married couple's decision not to register the vehicle under both spouses' names (necessarily making it more difficult for the County to ascertain the untitled spouse's name or any claimed ownership interest) logically factors into the reasonableness calculation.

In reaching this conclusion, the Court acknowledges that the Second Circuit and New York State courts have noted the importance of the "innocent co-owner." For example, in *Property Clerk of Police Dep't of City of New York v. Harris*, 878 N.E.2d 1004, 1008-09 (2007), the New York Court of Appeals held that co-owners with a present possessory interest in an impounded vehicle . . . are entitled to notice and the opportunity to be heard at a *Krimstock* hearing." And *Krimstock* itself expressed "special concern for the risk of erroneous deprivation posed to innocent owners." *Krimstock*, 306 F.3d at 56; *see also Ferrari*, 845 F. 3d at 50 n. 3 (discussion of Suffolk County's procedures "to prevent forfeiture or retention of vehicles belonging to 'innocent owners'"). Those cases, though, present very different circumstances than this case. As to *Harris*, that case concerned a situation where the vehicle was

"*registered* . . . under the co-ownership" of a husband and wife.  *See* Brief for Appellant, *Harris*, 2007 WL 4610283, at *3 (emphasis added).  The burden on the government to provide notice to a *registered, titled* co-owner, whose name is easily ascertainable, is significantly lower than the tremendous burden to find anyone who may conceivably claim a property interest in a vehicle. *Krimstock* also focused on different policy concerns.  *Krimstock*—whatever continued validity it has after *Culley*—cited a "heightened potential for erroneous retention where an arrestee . . . is not the owner of the seized vehicle."  *Krimstock*, 306 F.3d at 58.  However, for Plaintiffs Wos and Passavia, those concerns are not present because the sole registered owners of the vehicles (Plaintiffs' husbands) were the ones arrested for DWI.  Thus, the specific facts that animated *Harris* and *Krimstock* ultimately are not present in this case.

In the Opposition to dismissal, Plaintiffs Wos and Passavia reference numerous pleadings from other Nassau County DWI vehicle forfeiture actions that each purport to name as defendants persons "claiming an interest in the motor vehicle" that is the subject of the forfeiture action.  *See* ECF No. 26 at 2-3, 25.  As an initial matter, none of these Nassau County pleadings are cited or referenced in the Plaintiffs' respective Complaints.  *See Munck v. Simons Found.*, No. 23-CV-9188, 2024 WL 4307776, at *5 (S.D.N.Y. Sept. 26, 2024) ("Courts routinely decline to review factual allegations which appear for the first time in an opposition brief where they appear nowhere in the complaint.") (collecting cases).  Even so, the Opposition does not provide any useful context regarding these Nassau County pleadings—including, for example, the factual circumstances surrounding the arrest or the nature of the relationship between the alleged co-owners in those other cases.  The Court is left to wonder whether these innocent owner defendants notified Nassau County that they were claiming an interest or in what alternative way Nassau County came to decide to name them as defendants in those actions.  In any event,

Plaintiffs Wos and Passavia do not cite (and the Court is unable to find) any case law suggesting that a municipality independently must identify any and all persons anywhere who may claim to possess some form of interest before instituting a civil forfeiture proceeding. Plaintiff's cherry-picked cases from Nassau County—which are not referenced in the Complaint and are presented to the Court in a vacuum—fail to provide the Court with comparators from which it could find that Plaintiffs have adequately alleged that notice to unknown innocent co-owners is required by the Due Process Clause.

In sum, the Court rejects Plaintiffs' argument that the Due Process Clause imposes an obligation on states or counties to independently and affirmatively identify and notify any and all individuals who hypothetically may claim ownership interests before commencing civil forfeiture proceedings.

<em>b)    Alleged Failure to Provide an Opportunity to Be Heard</em>

These Plaintiffs' next complaint is that they had to move affirmatively on their own to intervene in the civil forfeiture proceedings, rather than have the County join them automatically or consent to their later addition. They allege that this places the improper burden on them to seek due process, rather than having it afforded to them as a matter of course. However, as noted above, the County could never know that Plaintiffs were unidentified co-owners of the vehicle because they were not on file with the DMV, so it could not be in a position to name them as defendants and grant them the opportunity to be heard. Instead, the County was on firm ground to send proper notice to and commence forfeiture proceedings against the titled owner of and those with readily ascertainable property interests in the vehicles—to wit, the names available at the DMV.

In the alternative, Plaintiffs Wos and Passavia appear to allege that once they did put the County on notice that they were asserting an ownership interest in their vehicles (which was not

23

evidenced with the DMV), the County should have stipulated to their addition to the forfeiture action. ECF No. 26 at 7. The argument does not persuade. In her Complaint, Plaintiff Wos alleges that she apparently *chose* not to seek to intervene in the civil forfeiture proceeding against her husband and the vehicle because the County had a policy of opposing such interventions. ECF No. 1. ¶ 9 ("Plaintiff did not attempt to intervene in the forfeiture action, as the County categorically refuses to stipulate to such intervention in similar cases."). The *Wos* Complaint nowhere alleges that state or county law prohibits such intervention. Instead, Plaintiff Wos alleges only that the County does not stipulate to such interventions as a matter of course. *Id.* For that reason, she claims to have been dissuaded from even moving to intervene to assert her interest in the Sereda Vehicle. *Id.*

The Court is unconvinced that the County's decision not to stipulate to particular relief deprived Plaintiff Wos of the opportunity to be heard in the state proceedings. Plaintiff cites no cases to that effect, and the Court is unpersuaded that the mere belief that an opponent will not consent to relief in state court opens the door to federal litigation grounded in a supposed lack of due process in the state proceeding. And to the extent Plaintiff Wos argues that she expected such a motion to be denied, that too cannot give rise to a federal claim. Plaintiffs regularly make motions to the courts with the understanding that there is a risk (and sometimes a likelihood) of denial. Here, Plaintiff Wos's strategic choice not to make a motion based on anticipated refusal to consent by the County or denial of that relief by the state magistrate cannot be used as the basis of a federal claim that she was denied the right to even make the motion and assert her claimed interest to the vehicle in the first place.

Plaintiff Passavia, on the other hand, did move to intervene in her husband's civil forfeiture proceeding. Plaintiff Passavia alleges that the County refused to stipulate to her

motion to intervene and that the court later denied the motion.  ECF No. 1 in 24-cv-1359.  As a starting point, no litigant has any legal obligation to consent to relief requested by an adversary.  *See Hough v. Maraj*, No. 21-CV-4568, 2023 WL 7687243, at \*5 (E.D.N.Y. Mar. 30, 2023) (recognizing that parties are not required to consent to an adversary's request).  Indeed, the County was fully permitted to argue, as it did, that the evidence did not suffice to show Plaintiff Passavia had an ownership interest in the Travis Passavia Vehicle.  And in fact, it is clear from the state court documents that the motion was denied because the state court concluded Plaintiff Passavia could not establish that she was a co-owner.  *See* ECF No. 27-10 in 24-cv-1359.  Upon learning of that determination, Plaintiff Passavia could have appealed that adverse determination in state court.  *See Alroy v. City of New York L. Dep't*, 69 F. Supp. 3d 393, 402-03 (S.D.N.Y. 2014) ("Plaintiff had a full and fair opportunity to be heard in the State Court proceeding, and he chose not to appeal the adverse decision rendered in that proceeding.").  And if the law in New York is, as Plaintiff Passavia suggests, that "[w]here ownership is disputed by one whose name is not on the title . . . a jury must determine the ownership," then these Plaintiffs might well have been successful in that appeal in state court, if she had chosen to appeal the denial of her motion.  ECF No. 26 at 21 (citing New York state cases).  But a claim under Section 1983 for a due process violation is not the proper vehicle for what could be raised in state court.[9]

---

[9] Plaintiffs' arguments also may run afoul of the *Rooker-Feldman* doctrine, which prohibits federal district courts from reviewing state court judgments.  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005) ("[Federal statute], as long interpreted, vests authority to review a state court's judgment solely in this Court [and not in the federal district courts].").  Critically, however, *Rooker-Feldman* applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Id.* at 284.  In her Opposition, Plaintiff Passavia argues that she is not a "state-court loser" because she was never permitted to be a party to the state court proceedings.  Once again, Plaintiff oversimplifies the matter.  There is case law supporting the notion that failed intervenor's federal claims are barred by *Rooker-Feldman*.  *See Bartolini v. Mongelli*, No. 17-CV-06276, 2018 WL 6338771, at \*3 (E.D.N.Y. Dec. 4, 2018) ("Plaintiff meaningfully participated in the state court proceeding, even though never formally recognized as a party to the proceedings.  Accordingly, Plaintiff became a state-court loser when Surrogate Kelly held that he had no standing to press his interest in the state probate proceedings.").  However, the Supreme Court has noted that *Rooker-Feldman* does not apply where "a federal

In any event, the Court is entirely unconvinced by any argument that a decision denying leave to intervene in a state court proceeding (or worse, a failure to make any such motion in the first instance) gives rise to a federal cause of action for failure to provide due process.  *See C.C.S.com USA, Inc. v. Gerhauser*, 518 F. App'x 1, 3 (2d Cir. 2013) (rejecting due process claim where plaintiff failed to avail itself of state court review proceedings and instead commenced a federal civil rights lawsuit).[10]

Importantly, the Court need not—and does not—decide whether, as a general matter, the County is required to name as defendants in a civil forfeiture action individuals who it knows to be claiming an interest in the vehicle *and* are not identified by the DMV or whom it thinks might have a legitimate interest in that vehicle.  Rather, the Court holds only that Plaintiffs Wos and Passavia have not plausibly alleged that the County is required to (1) provide notice to individuals who are not registered owners or alleged to be known to the County as claiming a legitimate ownership interest, or (2) stipulate to the intervention of individuals in the civil forfeiture proceeding whom they believe do not have an ownership interest in the vehicle.

---

plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached.'" *Exxon Mobil*, 544 U.S. at 293 (citation omitted).  In this case, the denial of leave to intervene implicated only part of Plaintiff Passavia's alleged injuries.  And a ruling in Plaintiff Passavia's favor that the County denied her due process and that she is entitled to monetary compensation does not necessarily involve review of the state court judgment denying her motion to intervene.  Plaintiff challenges the process afforded to her, not necessarily the state court's determination that she was not an owner of the Travis Passavia Vehicle.  Thus, although Plaintiff Passavia's failure to appeal her motion to intervene does not jurisdictionally bar the Court from hearing this case, it might warrant dismissal for failure to state a claim.  But to be clear, to whatever extent Plaintiff Passavia seeks judicial review of the order denying her motion to intervene, such review may be barred by *Rooker-Feldman* for substantially the same reasons as in *Bartolini*.

[10] To the extent that Plaintiffs Wos and Passavia allege a due process deprivation on the basis that they were not provided notice of the *Krimstock* hearing itself, that argument falls flat in light of the Supreme Court's decision in *Culley*, discussed *supra*, note 1.  *Culley* obviated the need for a *Krimstock* hearing in the first instance so long as a timely forfeiture action was instituted.  Neither Plaintiff Wos nor Plaintiff Passavia allege that the institution of a forfeiture hearing in these cases was not timely.

2.    Substantive Due Process Claim

As to Plaintiffs Wos and Passavia's substantive due process claim, it is well-established that they "must sufficiently allege: (1) a 'valid property interest' or 'fundamental right'; and (2) that the defendant infringed on that right by conduct that 'shocks the conscience' or suggests a 'gross abuse of governmental authority.'" *Leder v. Am. Traffic Sols., Inc.*, 81 F. Supp. 3d 211, 223 (E.D.N.Y. 2015) (citing *Sloup v. Loeffler*, No. 05-CV-1766, 2008 WL 3978208, at *10 (E.D.N.Y. Aug. 21, 2008)), *aff'd*, 630 F. App'x 61 (2d Cir. 2015)).  Courts in the Second Circuit have held that scope of the substantive due process clause does not extend to a property interest in a vehicle.  *Nestle Waters N. Am., Inc. v. City of New York*, No. 15-CV-05189, 2016 WL 3080722, at *11 (S.D.N.Y. May 25, 2016) (collecting cases), *aff'd,* 689 F. App'x 87 (2d Cir. 2017).  For that reason, Plaintiffs Wos and Passavia's substantive due process claims must be dismissed.

3.    *Monell* Claim and "As Applied" Challenge

Because Plaintiffs Wos and Passavia's due process claims fail, their *Monell* claim necessarily fails.  That is because "[i]t is well-settled that a *Monell* claim cannot succeed without an underlying constitutional violation."  *Oquendo v. City of New York*, 492 F. Supp. 3d 20, 32 (E.D.N.Y. 2020) (citing *Mastromonaco v. Cnty. of Westchester*, 779 F. App'x 49, 51 (2d Cir. 2019)); *see also Bodenmiller v. Cnty. of Suffolk*, No. 20-CV-00414, 2023 WL 2214037, at *11 (E.D.N.Y. Feb. 15, 2023), *report and recommendation adopted*, 2023 WL 4763471 (E.D.N.Y. July 26, 2023).

As for the "as-applied" constitutional challenge to Chapter 420 of the Suffolk County Code, the Court concludes that this claim is duplicative and must be dismissed as to both Plaintiffs Wos and Passavia for the same reasons outlined above.[11]

### C.    Plaintiff Spanos Fails to State A Claim

#### 1.    Allegedly Inadequate Notice

Although some of the same principles noted above apply to Plaintiff Spanos, his claims merit separate consideration.  Unlike Plaintiffs Wos and Passavia, Plaintiff Spanos was himself the registered owner of the vehicle in question.  Thus, rather than claiming that he did not receive notice because he was an "innocent owner," Plaintiff Spanos claims that the County provided him with the incorrect date of the *Krimstock* hearing.  Therefore, Plaintiff Spanos alleges that he could not (and did not) attend the hearing, and that default accordingly was entered against him. Notably, Plaintiff Spanos concedes that the Spanos Vehicle was returned to him on May 7, 2024. ECF No. 19-8.

Construing the Complaint in the light most favorable to Spanos, the Court concludes that Plaintiff Spanos alleges no more than negligence, which proves fatal to his case.  That is because negligent acts of county officials do not give rise to claims under the Due Process Clause.  *See D.S. v. City of Peekskill*, 581 F. App'x 65, 66 (2d Cir. 2014) (summary order) ("[T]o survive a motion to dismiss, [a plaintiff] must plausibly allege that defendants violated his constitutional rights *intentionally*—not just negligently.") (emphasis in original) (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Shannon v. Jacobwitz*, 394 F.3d 90, 94 (2d Cir. 2005)).

---

[11] Because the Court concludes that the County's procedures as to these Plaintiffs are sufficient as a matter of law to satisfy due process and that no amendment could cure them, the Court finds that amendment would be futile and therefore denies leave to amend.  *See Charter Commc'ns, Inc. v. Loc. Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, 338 F. Supp. 3d 242, 255 (S.D.N.Y. 2018) ("Where it appears that granting leave to amend would be futile or is unlikely to be productive, it is not an abuse of discretion to deny leave to amend.") (quoting *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)) (cleaned up).

The facts alleged in the Complaint do not plausibly allege that the County intentionally deprived Mr. Spanos of his property.  Instead, the Complaint contains allegations that Plaintiff Spanos did not receive proper notice of his *Krimstock* hearing because the date listed erroneously on the notice was for January 16, 2024, rather than January 26, 2024, and the statute on the notice was purportedly incorrect.  There is no allegation that the County or the magistrate intentionally withheld the correct information from Plaintiff Spanos.  Rather, the Complaint essentially sounds in negligence—to wit, a Suffolk County employee made an unintentional typo on the notice sent to Plaintiff.  Such apparent negligence need not go unpunished, as a plaintiff may raise numerous challenges (if he chooses to do so) to the official's conduct in state court.  But a federal civil rights lawsuit is not the vehicle for challenging a county official's allegedly negligent conduct.  *See D.S.*, 581 F. App'x at 66.  Accordingly, Plaintiff Spanos's Complaint fails to plausibly state a due process claim.

The "random and unauthorized" nature of the notice mistake further supports dismissal.  *See Johnston v. Town of Orangetown*, 562 F. App'x 39, 40 (2d Cir. 2014) (citing *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996)).  The Supreme Court and Second Circuit have long recognized a distinction between "established state procedures" and "random unauthorized" acts.  *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006); *Westchester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 621-22 & n.28 (S.D.N.Y. 2015).  In the latter circumstance (*i.e.*, where the acts were random and unauthorized), "a procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies."  *Rivera Powell*, 470 F.3d at 468 n.12.  Accordingly, where there are alleged "random unauthorized" acts, the Second Circuit has held that "[a]n Article 78

proceeding . . . constitutes a wholly adequate postdeprivation hearing for due process purposes."
*Johnston*, 562 F. App'x at 41 (quoting *Locurto v. Safir*, 264 F.3d 154, 175 (2d Cir. 2001)).

As the County correctly notes, Suffolk County law mandates that "[t]he seizing agency shall send notification of the seizure," which "shall inform the recipient that there will be a hearing promptly scheduled."  Suffolk County Code § 420-6(B)(1).  Suffolk County law accordingly does not authorize County employees to send erroneous hearing notices—and for obvious good reasons.  Plaintiff's theory is essentially that there was a violation of Suffolk County law, and as a result, he was deprived of his property.  Put differently, the violation was not part of an established state procedure, but was instead a random and unauthorized mistake by a County employee.  *See Hellenic Am. Neighborhood*, 101 F.3d at 882 (holding alleged facts were acts were random and arbitrary where they allegedly constituted a "flagrant violation" of city law).  As a result, the availability of an Article 78 proceeding in New York state suffices for due process purposes.  *See Rivera-Powell*, 470 F.3d at 467-68 & n.12.  Plaintiff Spanos does not allege that he pursued an Article 78 proceeding in connection with the entry of default due to the typographical error on the *Krimstock* hearing notice.

### 2.    Alleged Failure to Follow *Krimstock*

Perhaps recognizing the weakness of his notice claims, Plaintiff Spanos pivots to the *Krimstock* hearing itself.  He alleges that "the County's hearing officers never apply the requirements of *Krimstock* [and] never require the County to establish that it meets the three-pronged *Krimstock* test before directing the County to retain continuing possession of seized motor vehicles."  ECF No. 1 ¶ 49 in 24-cv-2684.  More specifically, he alleges "the County's hearing officers accept nothing more than 'attorney argument' that: (a) the owner of the seized vehicle was arrested for a DWI offense and (b) that the owner had a previous DWI offense, as a sufficient basis upon which to enter an order directing the County to retain continuing possession

30

of seized vehicles." *Id.* ¶ 53. According to the Complaint, these alleged violations of law are a consequence of the County's failure to train or supervise hearing officers.

The Court is not persuaded for a combination of reasons. First, the hearing transcript in Plaintiff Spanos's case refute these allegations. *See Ferrari*, 790 F. Supp. 2d at 38 (considering court documents from related case at motion to dismiss stage); *Perry v. NYSARC, Inc.*, 424 Fed. App'x 23, 25 (2d Cir. 2011) (court need not accept as true facts that are contradicted by documents of which the court can take judicial notice). Again, the Complaint contends that "the County's hearing officers accept nothing more than 'attorney argument' that: (a) the owner of the seized vehicle was arrested for a DWI offense and (b) that the owner had a previous DWI offense, as a sufficient basis upon which to enter an order directing the County to retain continuing possession of seized vehicles." ECF No. 1 ¶ 53 in 24-cv-2684. However, in reviewing the transcript, the magistrate admitted into evidence documentation provided by the County attorney for each of these points as to Plaintiff Spanos's son who had been arrested for driving while intoxicated (not Plaintiff Spanos). ECF No. 19-7 in 24-cv-2648. Thus, rather than relying on "attorney argument," the Court accepted actual documentation, which entirely refutes Plaintiff Spanos's claim that mere "attorney argument" is the basis for the *prima facie* finding and the entry of default. Additionally, the County attorney offered into evidence the notice that had been sent to Mr. Spanos. *Id.* Although the notice was defective as to the hearing date, it cannot be said that the magistrate ignored *Krimstock*'s requirements or accepted only "attorney argument" by admitting documentation into evidence. And as to the claim that the County produced no evidence that the third *Krimstock* prong (which requires the County to show that the retention of the vehicle was necessary), the Second Circuit has held that a showing of an individual's history of drunk driving can serve as *prima facie* evidence that retention for public

safety purposes is warranted. *See Ferrari*, 845 F.3d at 61-62 ("In short, the district court erred in concluding that our decision in *Krimstock I* prevents a county or municipality from relying on public safety concerns as the basis for retention *pendente lite*.").

That brings Plaintiff Spanos's claim back to where it started: if he had been afforded the opportunity to appear at the hearing and assert his innocent owner defense, he would have. The fatal problem with this argument is, however, that his notice claim fails for the reasons set forth above.

### 3.    *Monell* Claim

Even were the Court to conclude that these facts alleged a constitutional injury, however, Plaintiff's claims fail because he cannot plasuibly allege *Monell* liability. It is well established that a municipal government cannot be held liable on a *respondeat superior* theory. *See Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, "[m]unicipalities may be sued directly under section 1983 for constitutional deprivations imposed upon the plaintiff pursuant to a 'governmental custom, policy, or usage of the municipality." *Rodriguez v. City of New York*, 607 F. Supp. 3d 285, 292 (E.D.N.Y. 2022) (citation omitted). "Liability based on a failure to train is the most tenuous form of municipal liability under *Monell*." *Ocasio v. City of Canandaigua*, 513 F. Supp. 3d 310, 326 (W.D.N.Y. 2021). A claim for failure to train has three elements: "(1) a policymaker knows to a moral certainty that her employees will confront a given situation; (2) the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and (3) the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Jones v. City of New York*, No. 13-CV-929, 2016 WL 1322443, at *8 (S.D.N.Y. Mar. 31, 2016) (citation omitted) (quotation marks and alterations omitted).

Here, Plaintiff Spanos does not allege the existence of a policy by which the County deliberately ignored the risks identified in the Complaint.  Specifically, Plaintiff does not allege that Suffolk County bears responsibility for training hearing officers at all.  And it is not obvious that a county would be responsible for training or supervising these apparently quasi-judicial officers on the proper way to do their job.  Indeed, such oversight of the "neutral" hearing officers they purport to employ would seem to fly in the face of judicial independence.  *See J.L. v. E. Suffolk Boces*, 113 F. Supp. 3d 634, 644 (E.D.N.Y. 2015) (dismiss complaint where plaintiff did not allege that the defendant school district had control over training of BOCES teachers).  Indeed, the Second Circuit has found flaws in similar theories.  For example, failure of a city not to train their officers to commit perjury can generally not form the basis of a *Monell* claim because officers are obliged to follow their oath and "to follow one's oath . . . is obvious to all without training." *Beltran v. City of New York*, No. 19-CV-4647, 2020 WL 4260990, at *4 (S.D.N.Y. July 22, 2020) (quoting *Walker v. City of New York*, 974 F.2d 293, 299 (2d Cir. 1992)).  Here too, it seems obvious to the Court that training a hearing officer on the law seems counterintuitive, since those officials are, by their nature as at least quasi-judicial officers, required to be neutral and follow the law (regardless of any "training" on the law provided by the county where they sit).[12]

---

[12] The Court notes that other courts in this district (prior to *Culley* and *Ferrari*) came to a different conclusion at the motion to dismiss stage.  In a pair of cases, *Fasciana v. Cnty. of Suffolk*, 996 F. Supp. 2d 174, 184 (E.D.N.Y. 2014) and *Ferrari v. Cnty. of Suffolk,* 790 F. Supp. 2d 34, 46 (E.D.N.Y. 2011), the court allowed similar claims premised on failure to train to proceed.  Notably, the failure to train theory did not survive summary judgment in *Ferrari* because the plaintiff was unable to muster up evidence that the County was responsible for training hearing officers at all.  And the complaints in those cases alleged a greater number of examples of apparent failures to follow *Krimstock*.  To the extent those cases suggest that those complaints plausibly alleged failure to train claims (regardless of the number of examples cited in the complaints), this Court respectfully disagrees with those decisions.  In this Court's view, a failure to train claim cannot survive a motion to dismiss where there is no allegation that the County is even responsible for training the officers—especially where training the officers would seem counterintuitive to their roles as neutral magistrates.

Still, "[w]hile it is reasonable for city policymakers to assume their employees possess common sense, where there is a history of conduct rendering this assumption untenable, city policymakers may display deliberate indifference by doing so." *Id.* at 300. Alluding to a theory of failure to supervise, Plaintiff Spanos points to two incidents in which a hearing officer did not, as Plaintiff suggests he must, follow *Krimstock*. The first involves Endy Canales. The Complaint alleges that in the Canales case, the County "did not assert, much less offer evidence to establish . . . retention was necessary," as required by *Krimstock*. ECF No. 1 ¶ 65 in 24-cv-2684. This amounted to a "shift[ing] the burden of proof" for the third prong onto the vehicle owner." *Id.* ¶ 66.

As an initial observation, the Court notes that Plaintiff's counsel selectively chose to attach only an excerpted portion of this transcript to the Complaint. *See* ECF No. 1-9 in 24-cv-2684. It is not helpful to the Court to cherry-pick only specific excerpts that may help Plaintiff, rather than submit the full transcript. That point aside, however, *Ferrari* could not have been clearer in its holding (as discussed above) that a history of drunk driving is enough to establish the County's *prima facie* case. *See Ferrari*, 845 F.3d at 67. The only other instance of purported failure to cite *Krimstock* involves a situation where documentary evidence was discussed on the record by both counsel for the County and for the defendant at the hearing, but not entered into evidence. *See* ECF No. 1-7 in 24-cv-2684. These isolated instances—each of which is distinguishable—do not suffice to establish *Monell* liability. To the extent Plaintiff Spanos later references additional instances in the Opposition, the Court declines to consider them, as they were not referenced in the Complaint. *See Munck*, 2024 WL 4307776, at *5.

### 4.    Substantive Due Process and As Applied Challenge Claims

For the same reasons set forth above, Plaintiff Spanos's substantive due process claim fails because courts in the Second Circuit have routinely held that "the substantive due process

clause does not reach individuals' property interests in their vehicles." *Nestle*, 2016 WL 3080722, at *11.

As for Plaintiff Spanos's as-applied challenge to Suffolk County Code Chapter 420, for the same reasons as set forth above and because the County has not instituted a civil forfeiture action pursuant to that chapter against Plaintiff Spanos or his vehicle, this claim must be dismissed.[13]

## IV.    CONCLUSION

None of the three Plaintiffs states a claim for a violation of the Due Process Clause. Accordingly, for the reasons set forth above, the Court grants the Motion to Dismiss in *Wos* and *Passavia* with prejudice and in *Spanos* without prejudice.  The Clerk of the Court is directed to close *Wos* and *Passavia*.  Plaintiff Spanos may file an Amended Complaint consistent with this decision by June 27, 2025.[14]

Dated: Central Islip, New York
     May  16 2025

**SO ORDERED**:

    s/ Lee G. Dunst
**LEE G. DUNST**
United States Magistrate Judge

---

[13] Unlike *Wos* and *Passavia*, the Court is granting the motion to dismiss in *Spanos* without prejudice and permits Plaintiff to file an Amended Complaint consistent with this decision.  As the Court has found that there are no viable due process or *Monell* claims as a matter of law as related to (1) the notice of the *Krimstock* hearing, and the (2) the *Krimstock* hearing itself, it would be futile for Plaintiff Spanos to seek to amend the complaint on that basis.  However, Plaintiff Spanos may seek to amend complaint *only if* he has a good faith basis to assert due process or *Monell* claims related *exclusively* to what transpired during the time period *after* the *Krimstock* hearing on January 26, 2024, and up until the County returned the vehicle to him on May 7, 2024.  As noted previously, the County never brough a forfeiture action against Spanos and did not return the vehicle to him until after he filed the instant lawsuit.

[14] The Clerk of the Court is also directed to terminate the motion for leave to file excess pages (ECF No. 22 in 24-cv-644), as the Court granted that request on October 7, 2024.  *See* Electronic Order, dated October 7, 2024.